IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ERIC M. SOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:15CV519-WKW |
| | ) | |
| SUPREME COURT OF ALABAMA, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER and RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Eric M. Som, proceeding *pro se* and *in forma pauperis*, sues the Supreme Court of Alabama and the "Alabama State Bar Association"[1] ("ASB") for violating the United States Constitution and Title II of the Americans with Disabilities Act in connection with plaintiff's application for admission to the bar. (Doc. # 1). Upon review of the complaint, the court concludes that plaintiff's claims are due to be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]

---

[1]  Alabama statutes refer to this entity as the "Alabama State Bar" or "State Bar." See Act No. 133, Ala. Acts 1923, "AN ACT [t]o provide for the organization, regulation and government of the State Bar including admissions and disbarments of lawyers" (establishing integrated State Bar); id. at §20, referring to the consolidation of the newly established organization with the then existing "Alabama State Bar Association"); see also Ala. Code, §§ 34-3-16(b)("The officers of the Alabama State Bar shall be the president ... ."); 34-3-40(a)("The governing body of Alabama State Bar shall be the Board of Commissioners ... .").

[2]  The statute provides, in pertinent part: "[T]he court shall dismiss the case at any time if the court determines that ... the action or appeal – (i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "When a plaintiff proceeds *in forma pauperis*, the district court must dismiss the case if it determines that the action is frivolous. 28 U.S.C.

**Background**

The present lawsuit arises from the parties' dispute regarding whether plaintiff's examination scores were sufficient, when he submitted his application to the Alabama State Bar in May 2014, to qualify him for admission to the bar.  According to the plaintiff, his February 2014 Uniform Bar Examination (UBE) score of 259 and his November 2012 Multistate Professional Responsibility Examination (MPRE) score of 90 qualified him for admission. The ASB disagreed, contending that plaintiff's MPRE score was outdated and therefore no longer valid for admission.

On June 4, 2014,  plaintiff petitioned the Alabama Supreme Court to issue a writ of mandamus Judges &

 Opinions"directing the State Bar to honor his 2012 November MPRE score, or alternatively, to allow the petitioner to retake the MPRE without requiring the petitioner to achieve a UBE score of 260 or more for admission to the Alabama State Bar" (Petition for Writ of Mandamus, Exhibit O to Complaint, p. 9 (Doc. # 1-1 at p. 74 of 84)).  In August 2014, citing plaintiff's failure to cure the deficiencies in his application and Alabama's minimum UBE score of 260 – a four-point increase that had just gone into effect[3] – the ASB withdrew

---

§ 1915(e)(2)(B)(i).

[3]  The ASB indicated in its August 2014 letter to the plaintiff, and plaintiff does not dispute, that the required minimum UBE score was 260 at that time.  (See Exhibit O to the Complaint, Doc. # 1-1 at p. 83) ("[T]he State Bar's refusal to honor the petitioner's November 2012 MPRE score is tantamount to denying that the petitioner has achieved a passing score for admission to the Alabama State Bar. This is because, under the current rule, the petitioner cannot retake the MPRE without also needing to retake the bar exam."); see also id. at pp. 80-81; Exhibits D and U to the Complaint (Doc.

plaintiff's application from consideration.  On September 8, 2014, the Alabama Supreme Court denied plaintiff's petition for a writ of mandamus.  (Complaint, ¶¶ 14-21, 30 and Exhibits D (Doc. # 1-1, p. 30), F (id., p. 38), G (id., p. 40), H (id., p. 42), J (id., pp. 47-51), K (id., pp. 52-55), O (id., pp. 62-84), U (Doc. # 1-2, p. 79), and V (id., p. 82)).

Ten months thereafter, plaintiff commenced this action by filing a complaint in the United States District Court for the District of Colorado. After granting plaintiff's motion for leave to proceed *in forma pauperis*, that court transferred the case to this district.  (Doc. ## 1, 4, 5).  By order entered on July 23, 2015, the presiding District Judge referred this matter to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636, "for further proceedings and determination or recommendation as may be appropriate." (Doc. # 7).

### Plaintiff's Claims

Plaintiff claims entitlement to bar admission based on the version of Rule VI(B) of the Alabama Supreme Court's Rules Governing Admission to the Alabama State Bar that was displayed on the ASB website when plaintiff applied for admission (the "old" rule). That rule provided that "[s]uccessful completion of the MPRE by an applicant at any time within the twelve (12) month period before the taking of the Academic Bar Examination will be accepted and such successful completion may be carried over for a period of twenty (20) months from the time the first Academic Bar Examination is taken, if the applicant does not pass the Academic Bar Examination." (See Complaint, ¶¶ 18-20 and Exhibit K (Doc. # 1-1,

---

# 1-1 at pp. 30; Doc. # 1-2 at p. 79).

pp. 52-55), Rule VI(B)(F)).[4]

Plaintiff, a Colorado resident, alleges that the defendants (1) applied Alabama's bar admission rules unconstitutionally to favor Alabama residents over nonresident applicants, (2) deprived him of his liberty and property (that is, a license to practice law) without due process of law and in violation of his right to a fair trial, and (3) failed to accommodate his disability by withdrawing his application because of plaintiff's failure to retake the Multistate Professional Responsibility Examination (MPRE) before August 2014.  In Counts 1, 2, 4, and 5, plaintiff asserts §1983 constitutional claims alleging that defendants violated his rights under the "dormant" aspect of the Commerce Clause, the Privileges and Immunities Clause,

---

[4] Plaintiff contends that he took and failed his first "Academic Bar Examination" on July 30, 2013, and, therefore, that his passing MPRE score from November 2012 remained valid until twenty months after July 2013. (Complaint, ¶¶ 18-20). In his petition to the Alabama Supreme Court for a writ of mandamus, plaintiff explained that he "failed the July 2013 bar examination in Colorado." (Doc. # 1-1, p. 69).  He further alleged that, on May 28, 2014 – after he had responded by letter to the ASB's deficiency notice – Justin Aday of the ASB left him a voice message asking plaintiff to call him. When plaintiff did so, "the State Bar" informed plaintiff that the rule then on its website was "outdated" and, further, that plaintiff's "interpretation of the MPRE rule on its website was incorrect because the rule only applied to applicants sitting for the bar examination in the state of Alabama." (Id., pp. 70-71). This alleged explanation is consistent with the text of the old rule on which plaintiff relies, which then defined the "Academic Bar Examination" to include the Alabama essay examination. (See Exhibit K to Complaint, Doc. # 1-1 at p. 52 (old Rule VI(A)(1), listing and describing the four components of the "Academic Bar Examination[,]" including the "Alabama Essay Examination").

In his complaint in this court, in contrast, plaintiff alleges that the ASB "failed to provide Mr. Som with an explanation as to why Plaintiff's interpretation of the then aforementioned rule – as then displayed on its website and as then applicable – was incorrect. In fact, Eric Som only found out, via telephone to the State Bar to inquire as to the status of his application, that his application was being denied on the basis of his MPRE score." (Id., ¶¶ 18-21).

and the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments.[5]

He further asserts, in Counts 2 and 4, facial challenges to the constitutionality of the bar rule governing the validity period for bar applicants' MPRE scores, contending that the rule discriminates against nonresident applicants. In Count 3, plaintiff asserts a failure-to-accommodate claim under Title II of the Americans with Disabilities Act. Plaintiff seeks a judgment (1) declaring that the rules governing admission to practice law in the State of Alabama violate the privileges and immunities clause and the dormant aspect of the commerce clause "by favoring Alabama residents over nonresidents[,]" (2) declaring that the defendants violated plaintiff's constitutional rights and his right under Title II of the ADA to reasonable accommodation of his disability, and (3) enjoining the defendants (a) "to recognize Plaintiff's bar examination score of 259 and Plaintiff's MPRE score of 90 as valid"; (b) "to reinstate his application for admission to the Alabama State Bar without requiring Plaintiff to resit for the bar exam in that State, or retake the MPRE"; (c) "to accommodate individuals with qualified disabilities under similar circumstances such as

---

[5] Plaintiff drafted his complaint to assert Counts 2, 4, and 5 directly under the U.S. Constitution. Because Congress has provided a statutory mechanism for pursuing claims for the deprivation, under color of state law, of "any rights, privileges, or immunities secured by the Constitution," plaintiff may not proceed directly under the Constitution but must, instead, assert his constitutional claims through section 1983. See 42 U.S.C. § 1983; GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1253 n. 15 (11th Cir. 2012)("Where a statute provides an adequate remedy, we will not imply a judicially created cause of action directly under the Constitution."); Williams v. Bennett, 689 F.2d 1370, 1390 (1982)(rejecting direct action under the eighth and fourteenth amendments because § 1983 provides an adequate substitute for such an action); see also Dennis v. Higgins, 498 U.S. 439 (1991) (holding that Commerce Clause claims are actionable under section 1983). Consonant with its duty to construe the *pro se* litigant's complaint liberally, the court treats the complaint as asserting all of plaintiff's federal constitutional claims pursuant to 42 U.S.C. § 1983.

Plaintiff's to retake the MPRE, if so determined by this Court, within a reasonable time and

without requiring such individuals to retake the bar exam"; and (d) to apply defendants'

"then and current rules governing admission to practice law"[6] to nonresidents and residents

of Alabama equally.[7]   (Complaint, *ad damnum* clauses to Counts 1-5).

---

[6]  Rule VI(B) was revised twice in 2013 – well before plaintiff applied for admission – by order of the Alabama Supreme Court.  See Order entered January 11, 2013 (approving proposed revisions to the Rules Governing Admission to the Alabama State Bar); Order entered August 15, 2013 (approving proposed revision to Rule VI(B) of the Rules Governing Admission to the Alabama State Bar)(both orders available on the Alabama Unified Judicial System's website at http://judicial.alabama.gov/rules/rules.cfm (accessed 10/6/2015)).  Rule VI(B)(F), as approved on January 11, 2013, retained the old rule's MPRE validity language.  However, it further provided that "[a]pplicants who transfer a UBE score from another jurisdiction must successfully complete the MPRE no earlier than 12 months before the UBE was taken in the transferring jurisdiction[.]" (See Appendix to January 11, 2013 order at p. 25 (Rule VI(B)(F)). This added language governing the earliest acceptable MPRE scores for UBE-transfer applicants survived the further revision of Rule VI(B) on August 15, 2013.  (See Appendix to August 15, 2013 order (Rule VI(B)(E)).

Plaintiff sought admission based on his score from the UBE taken in Colorado in February 2014.  (See Complaint, ¶ 14 and Exhibit F (unofficial UBE score report)). Under the rule in effect when he applied, the MPRE score validity period is calculated differently under Rule VI(B)(F) for UBE-transfer applicants than it is for applicants who take the academic bar examination in Alabama: for the former group, the oldest acceptable score is from an MPRE administered twelve months before the UBE resulting in the transferred score; for the latter group, it is from an MPRE administered twelve months before the first time the applicant takes the bar exam. However, these differing formulations of the score validity period result in a uniform *maximum* age for MPRE scores across both groups. This is so because a passing MPRE score may be carried over for 25 months from the first "academic bar examination" for an Alabama-exam applicant under Rule VI(B)(F), and a transferred UBE score remains valid for 25 months after the test administration resulting in the transferred score under Rule VI(B)(C)(6). The effective life span of a passing MPRE score will vary between particular Alabama bar applicants: for UBE-transfer applicants, depending on how long each applicant waits after obtaining a passing UBE score to apply for admission in Alabama based on that score and, for Alabama-exam applicants, depending on how long each applicant takes to pass the UBE.  However, under the rule, no applicant from either group can qualify for admission based on an MPRE score achieved more than 37 months previously.

[7]  Some of plaintiff's allegations and demands for relief suggest that plaintiff's claims may rest, in part, on defendants' alleged violation of the rights of other nonresident and disabled applicants. See *e.g.,* Complaint, ¶ 48 ("[T]he Defendants violated the Dormant Clause by disqualifying out-of-state bar applicants, such as Eric Som, who achieved its then minimum passing score of 256 or more,

**Jurisdiction**

To the extent that plaintiff seeks declaratory and equitable relief to remedy the defendants' allegedly unlawful application of the bar admission rules – *i.e.*, (1) the ASB's refusal to accept his November 2012 MPRE score as timely and its withdrawal of his application from consideration when the required minimum UBE score increased to 260, and (2) the Alabama Supreme Court's refusal to direct the ASB to accept the 2012 MPRE score or to except plaintiff from the new UBE score requirement – this court lacks jurisdiction to entertain plaintiff's claims for relief. As noted previously, plaintiff challenged the ASB's determination that his MPRE score was outdated by petitioning the Alabama Supreme Court for a writ of mandamus. (Exhibit O to Complaint, Doc. # 1-1, pp. 62-84). In that petition, he contended that the ASB's refusal to accept his MPRE score was unfair, arbitrary, or exceeded its discretion. (Id., Doc. # 1-1, p. 73). He argued that "the State Bar's refusal to honor the petitioner's November 2012 MPRE score is tantamount to denying that the petitioner has

---

and by withdrawing from consideration their applications based on alleged deficiencies, such as determining that the MPRE scores of nonresidents of Alabama, similarly situated as Plaintiff, were outdated."); ¶ 55 ("The Defendants' mandate that Plaintiff – an individual with a disqualified [sic] disability and those with qualified disabilities in similar circumstances – retake the MPRE and submit new scores before August of 2014 or have their applications withdrawn from consideration violates the ADA."); Count 3, *ad damnum* clause (requesting that defendants be enjoined to accommodate qualified individuals with disabilities by allowing them to retake the MPRE without retaking the bar exam). However, plaintiff's allegations do not demonstrate that he has standing to assert the rights of any other bar applicant; among other reasons, plaintiff fails to allege that he has suffered any injury as a result of a violation of the rights of other applicants. See Warth v. Seldin, 422 U.S. 490, 499 (1975) ("The Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*, even though the court's judgment may benefit others collaterally.")(emphasis added).

achieved a passing score for admission to the Alabama State Bar.  This is because, under the current rule, the petitioner cannot retake the MPRE without also needing to retake the bar exam." (Id., Doc. # 1-1, p. 83). Plaintiff sought a writ requiring the ASB to "honor [plaintiff's] November 2012 MPRE score or alternatively, allow the petitioner to retake the MPRE without requiring the petition to achieve a UBE score of 260 or more for admission to the Alabama State Bar." (Id., Doc. # 1-1, p. 74).  The Alabama Supreme Court denied plaintiff's petition, with two judges dissenting, by order entered on September 8, 2014. (Complaint, ¶ 31 and Exhibit V (Doc. # 1-2, p. 82)). Thus, with regard to his application for admission to the Alabama State Bar, plaintiff now seeks from this court the very same relief denied to him previously by order of the Alabama Supreme Court. (See Complaint, pp. 12, 15, 18-19 (*ad damnum* clauses)).

"Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari," where a party claims violation of a right arising under federal law.  28 U.S.C. § 1257.  This statute, "as long interpreted, vests authority to review a state court's judgment solely in [the United States Supreme Court]." Exxon Mobil Corp v. Saudi Basic Industries Corp, 544 U.S. 280, 292 (2005)(citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); other citations omitted).  "'[L]ower federal courts possess no power whatever to sit in direct review of state court decisions.'" Feldman, 460 U.S. at 482 n. 16 (quoting Atlantic Coast Line R. Co. v. Engineers, 398 U.S. 281, 296 (1970)).

The <u>Feldman</u> case arose from the application of a rule adopted by the District of Columbia Court of Appeals governing qualifications for admission to the bar, and the decisions of that court to deny the two plaintiff bar applicants' petitions for waiver of the rule. <u>Feldman</u>, 460 U.S. at 463-68, 470-72.[8]  The Supreme Court held that, "to the extent that [the plaintiffs] sought review in District Court of the District of Columbia Court of Appeals' denial of their petitions for waiver, the District Court lacked subject matter jurisdiction over their complaints." <u>Id.</u>, 460 U.S. at 482.  The Court found it "important to note ... the strength of the state interest in regulating the state bar" and quoted, with approval, the following language from <u>MacKay v. Nesbett</u>, 412 F.2d 846 (9th Cir. 1969):

> "[O]rders of a state court relating to the admission, discipline, and disbarment of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court, and not by means of an original action in a lower federal court. The rule serves substantial policy interests arising from the historic relationship between state judicial systems and the members of their respective bars, and between the state and federal judicial systems."

<u>Feldman</u>, 460 U.S. at 482 n. 16 (quoting <u>MacKay</u>, 412 F.2d at 846). The Supreme Court explained that, if the claims presented to the federal court are "inextricably intertwined" with the state court's decision as to the application for admission, the district court lacks jurisdiction whether or not the plaintiff asserted those claims in the state court proceeding. (<u>Id.</u>) ("If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's

---

[8] The Supreme Court explained that the District of Columbia Court of Appeals is included within the term "'highest court of a state'" as used in 28 U.S.C. § 1257. <u>Id.</u> at 463-64.

application for admission to the state bar, then the District Court is in essence being called upon to review the state court decision. This the District Court may not do.").[9]

The jurisdictional issue in the present case is not meaningfully distinguishable from that resolved by the United States Supreme Court in <u>Feldman</u>.[10] Plaintiff is "'a state-court

---

[9] This holding gave rise to the jurisdictional bar known as the *Rooker-Feldman* doctrine, which draws its name from <u>Feldman</u> and from the Supreme Court's decision in <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923).

[10] The fact that plaintiff asserts a claim under the ADA does not alter the result of the jurisdictional analysis; the ADA provides no exception to the *Rooker-Feldman* bar. <u>Dale v. Moore</u>, 121 F.3d 624, 627-628 (11th Cir. 1997) (holding that the ADA does not authorize federal appellate review of final state court decisions). Additionally, the fact that plaintiff sought relief from the Alabama Supreme Court by way of a mandamus petition is not sufficient to place this case beyond the reach of the *Rooker-Feldman* doctrine. In <u>Ex parte Grubbs</u>, 542 So.2d 927 (Ala. 1989), the Alabama Supreme Court considered an application for rehearing of its denial of a bar applicant's petition for a writ of mandamus to the Alabama State Bar. The petitioner sought "admission to the State Bar without the requirement of passing the Alabama State Bar Examination" because of the alleged violation of his constitutional right of equal protection in 1949, when he was denied admission to the University of Alabama School of Law because of his race. The court explained the extent of its own power in this context, noting that it "has continuing, inherent, and plenary power to govern admissions to the State Bar." <u>Id.</u> at 931. The court quoted the *Black's Law Dictionary*'s definitions of "inherent powers" (*i.e.*, "[a]n authority possessed without its being derived from another. ... Powers originating from the nature of government or sovereignty, *i.e.*, powers over and beyond those ... reasonably to be implied from express grants") and "plenary powers" (*i.e.*, "[a]uthority and power as broad as is required in a given case"). <u>Id.</u> (quoting *Black's Law Dictionary* 703, 1039 (5th ed. 1979). While it declined to exercise those powers on the basis of laches, the court concluded that it had the power to grant the relief that the plaintiff sought for the alleged violation of his constitutional rights – that is, to require the state bar to admit the applicant without his passing the bar examination. <u>Id.</u>

This court concludes that – in the context of the Alabama Supreme Court's "continuing, inherent, and plenary" authority to regulate the state bar – the Alabama Supreme Court's ruling in plaintiff's mandamus proceeding implicates the *Rooker-Feldman* doctrine. <u>See</u> <u>Doe v. Florida Bar</u>, 630 F.3d 1336, 1341 (11th Cir. 2011) ("As the Supreme Court made clear in <u>Feldman</u>, the form of a proceeding is not significant, because '[i]t is the nature and effect which is controlling.' Zisser sought review of the Florida Bar's decision in the Supreme Court of Florida. She filed with that court a lengthy petition with numerous attachments, and her petition was denied. There is no indication that the denial [of review] was unconnected to the merits.") (citation and footnote omitted); <u>but see</u> <u>Cox v. Alabama State Bar</u>, 392 F. Supp. 2d 1295, 1298-1300 (M.D. Ala. 2005)

loser[] complaining of injuries caused by [a] state-court judgment[] rendered before the district court proceedings commenced and inviting district court review and rejection of [that] judgment[]." Exxon-Mobil, 544 U.S. at 284. Accordingly, the *Rooker-Feldman* doctrine bars plaintiff's claims for declaratory and equitable relief as to his application for admission to the Alabama State Bar. See Kirkpatrick v. Shaw, 70 F.3d 100, 102 (11th Cir. 1995) ("Review of the merits of the Florida Supreme Court's decision to deny Kirkpatrick's application [for admission to the Florida Bar] may be had only in the Supreme Court on certiorari.")(citing Feldman, 460 U.S. at 486); Berman v. Florida Board of Bar Examiners, 794 F.2d 1529 (11th Cir. 1986) (holding that the plaintiff's claim was not within the original jurisdiction of the district court where it was "clearly a challenge to a state court judicial proceeding resulting in the denial of a particular application (Berman's) for admission to the Florida Bar"); see also Doe v. Florida Bar, 630 F.3d at 1340-41 (*Rooker-Feldman* doctrine deprived district court of jurisdiction to decide the plaintiff's "as applied challenges" to the Florida Bar's application of bar rules governing certification of specialists); Caffey v. Alabama Supreme Court, 469 F. App'x. 748 (11th Cir. 2012)(district court lacked jurisdiction to entertain claims for declaratory and injunctive relief as to plaintiff's disbarment).

Thus, this district court lacks the power to entertain Counts 1, 3, and 5 entirely. The

---

(concluding that the Alabama Supreme Court's order denying a mandamus petition in a bar admission matter did not, under the *Rooker-Feldman* doctrine, deprive the district court of jurisdiction).

court also lacks jurisdiction to proceed on Counts 2 and 4, to the extent that they include "as applied" challenges to the Alabama Supreme Court's Rules Governing Admission to the Alabama State Bar.

## Article III Standing

In Count 2, plaintiff seeks a judgment declaring "that the Defendants' rule[] governing admission to practice law in the State of Alabama violates the Dormant Clause by favoring Alabama residents over nonresidents." (Complaint, p. 13). Construed liberally, Count 4 may be understood to challenge Rule VI(B) as discriminating, on its face, against nonresident applicants in violation of the Privileges and Immunities Clause. (Complaint, ¶¶ 60-61). These claims do not implicate the *Rooker-Feldman* doctrine. <u>Feldman</u>, 460 U.S. at 486 ("United States District Courts ... have subject matter jurisdiction over general challenges to state bar rules ... which do not require review of a final state-court judgment in a particular case.  They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional."). Nevertheless, this court lacks jurisdiction to proceed on plaintiff's claims of facial unconstitutionality because plaintiff lacks Article III standing to prosecute them.

"Before Article III authorizes a court to decide a case, there must be a justiciable case or controversy.  'Perhaps the most important of the Article III doctrines grounded in the case-or-controversy requirement is that of standing.'" <u>Alabama Power Co. v. U.S. Dept. of</u>

12

Energy, 307 F.3d 1300, 1308 (11th Cir. 2002) (citation omitted).  To satisfy the requirements for Article III standing to challenge the Alabama Supreme Court's rule governing the MPRE validity requirement for admission to the bar, plaintiff must establish that "(1) he has suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the operation of the rule[]; and (3) a favorable judgment is likely to redress the injury." Harrell v. The Florida Bar, 608 F.3d 1241, 1253 (11th Cir. 2010).

For purposes of the standing analysis, the court assumes that the Alabama Supreme Court's bar admission rule regarding the MPRE validity period is facially unconstitutional, both in its old form and as amended.  However, to the extent that plaintiff challenges the old rule,[11] he cannot demonstrate causation. The old rule was no longer in effect by the time that plaintiff applied for admission (see n. 6, *supra*) and, thus, its alleged unconstitutionality cannot have caused his alleged injury.[12]

With regard to the rule as amended, plaintiff's allegations fail to establish that a judgment declaring the MPRE validity provision to be unconstitutional would redress his injury. This is so because of the required minimum UBE score of 260 that went into effect

---

[11]   See Complaint, pp. 16-17 (Count 4 and its *ad damnum* clause, requesting that the court "require Defendants' *then and current rules* governing admission to practice law in their jurisdiction to be equally applied to nonresidents and residents of Alabama").

[12]   With regard to the old rule, plaintiff alleges – at most – that he was injured by the ASB's conduct in failing to remove the old rule from its website, causing plaintiff to rely on it to his detriment. (See Complaint, ¶¶ 16-25, 29; Exhibit O to Complaint, Petition for a Writ of Mandamus, pp. 4-5). This differs, obviously, from alleging an injury arising from the unconstitutionality of the old rule.

upon the administration of the July 2014 bar examination, almost a year before plaintiff commenced this lawsuit. Plaintiff does not challenge the amended score requirement as discriminatory – nor could he, since the new higher minimum score applies across the board to all applicants who seek admission by examination, whether by transfer of a UBE score or by sitting for the UBE in Alabama. See Rule VI(B)(C)(1) ("Basic Rule" regarding examination results, specifying that "[a]n examinee who achieves a total UBE scaled score of 260 or above passes the Academic Bar Examination."); Rule VI(B)(C)(6) ("An applicant who has taken the entire UBE in a single administration in another jurisdiction and earned a total UBE scaled score of 260 or above may transfer his or her UBE score and be excused from taking the UBE in Alabama."). Plaintiff alleges that he scored 259 on the UBE administered in February 2014; he does not contend that he has since attained a higher score.

Thus, a judgment declaring that Rule VI(B)(E) discriminates against nonresident bar applicants in violation of the Commerce Clause and/or the Privileges and Immunities Clause because it prescribes a different MPRE validity period for UBE-transfer applicants than it does for Alabama-examination applicants would do nothing to redress plaintiff's injury – i.e., his *continuing* ineligibility for admission to the Alabama State Bar.[13] Even if this court were to enter a judgment requiring that the defendants apply the same validity period formula to UBE-transfer applicants as it does to other applicants, plaintiff remains ineligible for

---

[13] As discussed above, the *Rooker-Feldman* doctrine bars this court from deciding the question of plaintiff's *past* entitlement to admission – i.e., his eligibility when he applied for admission in May 2014, before the effective date of the new minimum UBE score. Plaintiff does not allege that he has since re-applied for admission.

admission because he has failed to attain the requisite UBE score of 260 or above.  Thus, the allegations of plaintiff's complaint, accepted as true and viewed in the light most favorable to him, fail to demonstrate that a favorable judgment on his facial invalidity challenge to the current rule would redress his injury.

Thus, to the extent that Counts 2 and 4 assert claims that Rule VI(B)(E) is unconstitutional on its face in violation of the Commerce Clause and the Privileges and Immunities Clause plaintiff's claims are due to be dismissed for lack of jurisdiction, because plaintiff lacks constitutional standing to assert them.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that, pursuant to 28 U.S.C. § 1915(e)(2)(B):

(1) to the extent that any of plaintiff's claims rest on any alleged violation of the rights of other bar applicants, plaintiff's claims be dismissed for lack of jurisdiction due to plaintiff's lack of standing to pursue those claims;

(2) Counts 1, 3, and 5 be dismissed entirely for lack of jurisdiction pursuant to the *Rooker-Feldman* doctrine;

(3) Counts 2 and 4, to the extent that they seek declaratory and injunctive relief related to plaintiff's application for admission to the bar, also be dismissed for lack of jurisdiction pursuant to the *Rooker-Feldman* doctrine;

(4) Counts 2 and 4, to the extent that they present facial constitutional challenges to

Rule VI(B) of the Alabama Supreme Court's Rules Governing Admission to the Alabama State Bar, be dismissed for lack of jurisdiction, as plaintiff lacks Article III standing to pursue these claims; and

(5) that, in the event that the presiding District Judge adopts this recommendation in full, he refrain from entering final judgment for a period of ten days, to allow plaintiff an opportunity to seek to amend his complaint.[14]

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the plaintiff. Plaintiff is DIRECTED to file any objections to this Recommendation on or before November 2, 2015. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the plaintiff objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal

---

[14] Even though he proceeds *pro se* in this matter, plaintiff is constrained by Rule 11 of the Federal Rules of Civil Procedure, under which the filing of any such amendment would constitute plaintiff's certification that "the claims ... are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Plaintiff, a law-school graduate, should familiarize himself with the immunity doctrines that may be implicated by any claims he seeks to present by amendment, including Eleventh Amendment immunity and judicial immunity.

conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; see Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

It is further ORDERED that:

(1) the Clerk is DIRECTED to serve the complaint and summons, and a copy of this Recommendation, on the defendants; and

(2) that the defendants are hereby relieved of their obligation to respond to the complaint absent a further order of the court directing them to do so, but may object to this recommendation or respond to any objections that the plaintiff may file, as permitted by 28 U.S.C. § 636(b) and Rule 72 of the Federal Rules of Civil Procedure.

DONE, this 20th day of October, 2015.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

17