IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ERIC M. SOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:15CV519-WKW |
| | ) | |
| SUPREME COURT OF ALABAMA, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Eric M. Som, proceeding *pro se* and *in forma pauperis*, sues the Alabama Supreme Court and State Bar for violating the United States Constitution and the Americans with Disabilities Act in connection with plaintiff's application for admission to the bar. Pursuant to 28 U.S.C. § 1915(e)(2)(B)[1], the presiding District Judge dismissed all of the claims in plaintiff's original complaint for lack of jurisdiction; however, he allowed plaintiff the opportunity to move for leave to amend his complaint. (Doc. # 13). In plaintiff's First Amended Complaint (Doc. # 14), plaintiff names the same defendants and alleges the same underlying facts as he did originally.[2] He asserts the same causes of action, except that he no longer brings his separate claim for "Violation of Plaintiff's 5th and 14th Amendment

---

[1] The statute provides, in pertinent part: "[T]he court shall dismiss the case at any time if the court determines that ... the action or appeal– (i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "When a plaintiff proceeds *in forma pauperis*, the district court must dismiss the case if it determines that the action is frivolous. 28 U.S.C. § 1915(e)(2)(B)(i).

[2] See Doc. # 14, ¶¶ 1-3 and 5-34 (re-alleging, *verbatim*, ¶¶ 1-3 and 6-35 of Complaint).

Rights" to due process and a fair trial, previously asserted as Count 5 in the original complaint. (See Doc. # 1, ¶¶ 66-end).[3] The only significant substantive change in the First Amended Complaint is that plaintiff has amended Count 1, his § 1983 claim, to substitute a demand for "compensatory and punitive damages against the Defendants" in lieu of his previous demands for an injunction requiring the defendants to "recognize Plaintiff's bar examination score of 259 and Plaintiff's MPRE score of 90 as valid" and for "any other relief deemed just and equitable" by the court. (See Count 1 *ad damnum* clauses in both complaints).[4] Despite plaintiff's amendment, his claims fail to survive the court's § 1915 review. Counts 2 through 4 (the Commerce Clause, ADA, and Privileges and Immunities claims) are due to be dismissed for lack of jurisdiction for the same reasons as before. Additionally, while plaintiff's § 1983 claim for monetary damages does not present precisely the same issue as his previous claim for equitable relief, the claim nevertheless remains within the narrow confines of the *Rooker-Feldman* doctrine and, thus, this court may not

---

[3] Plaintiff continues to assert a violation of his due process and equal protection rights in Count 1, his § 1983 claim. He has modified his "Dormant Clause" and ADA accommodation claims (Counts 2 and 3) to omit his previous references to applicants other than the plaintiff (compare ¶¶ 47, 54-55 of amended complaint with ¶¶ 48, 55-56 of original complaint). Plaintiff adds legal argument pertaining to the *Rooker-Feldman* doctrine and to his standing. (First Amended Complaint, pp. 2-4 and ¶ 64). As to exhibits, plaintiff: (1) omits previous exhibits V, W, and X entirely and portions of previous exhibits E, M, P, Q, and S; (2) adds Exhibit L, which was referenced in the original complaint (Doc. # 1, ¶ 20(a)) but not attached to it; and (3) adds, as Exhibit Y to the amended complaint, his objections to the previous Recommendation of the Magistrate Judge.

[4] Plaintiff amended his demand for relief in Count 1 in an attempt to overcome the *Rooker-Feldman* bar. (See Doc. # 14, pp. 2-4 and Count 1 *ad damnum* clause). The *Younger* abstention case law that plaintiff cites in the legal argument that he has added to his complaint (id., p. 3) does not apply to the *Rooker-Feldman* jurisdictional issue before this court. (Id., p. 3).

exercise jurisdiction over that claim. Additionally, even if this court has jurisdiction to entertain the claim, it is barred by the defendants' Eleventh Amendment immunity.

### The "Dormant Clause"[5] and "Privileges and Immunities" Claims

Plaintiff modifies Count 2 to delete his previous allegation regarding the defendants' withdrawal of the applications of other nonresident bar applicants.[6,7] In Count 4, his Privileges and Immunities claim, plaintiff's only alteration is to add an allegation that "he meets Article III standing, and if not, he meets procedural standing" (see id., ¶ 65) (citing "Exhibit Y").[8,9] This court dismissed these claims previously for lack of jurisdiction:

---

[5] Plaintiff claims that "the Defendants' conduct violated the Dormant Clause because it unreasonably burdens interstate commerce." (First Amended Complaint, ¶ 46). It is clear that plaintiff intends, in Count 2, to invoke the dormant aspect of the interstate commerce clause.

[6] *Compare* ¶ 47 of amended complaint with ¶ 48 of original complaint.

[7] Plaintiff continues to demand the same relief in Count 2 as he did originally – *i.e.*, a declaration "that the Defendants' rule[] governing admission to practice law in the State of Alabama violates the Dormant Clause by favoring Alabama residents over nonresidents" and "any other relief deemed just and equitable[.]" (First Amended Complaint, Count 2).

[8] Exhibit Y is a copy of plaintiff's objections to the previous Recommendation of the Magistrate Judge, in which he challenged the conclusion that he lacked standing to pursue Counts 2 and 4 of the original complaint, to the extent that they presented facial challenges to the constitutionality of the bar admission rules. Plaintiff's objections reveal that he misunderstands the nature of a *facial* challenge to the constitutionality of a rule. (See Doc. # 12, pp. 2-9) (raising contentions that apply only to plaintiff's "as applied" claims). To the extent that Counts 2 and 4 of the original complaint challenged the old and current rules "as applied" to the plaintiff's application for admission, this court dismissed those claims pursuant to the *Rooker-Feldman* doctrine, not for lack of standing. (See Doc. ## 9, 13).

[9] As before, plaintiff seeks a declaration that "the Defendants violated the Privileges and Immunities Clause" and an injunction "requir[ing] Defendants' then and current rules governing admission to practice law in their jurisdiction to be equally applied to nonresidents and residents of Alabama[.]" (First Amended Complaint, Count 3).

(1) pursuant to the *Rooker-Feldman* doctrine, to the extent that they challenge the defendants' application of Rule VI(B) of the Rules Governing Admission to the Alabama State Bar to plaintiff's application for admission to the bar; and (2) due to plaintiff's lack of standing to pursue the claims, to the extent that the claims assert facial constitutional challenges to Rule VI(B) (Doc. # 13). Plaintiff's amendments to Counts 2 and 4 do not cure these jurisdictional defects.

## The ADA Claim

Count 3, plaintiff's ADA failure-to-accommodate claim, is unchanged from the original complaint, except that plaintiff omits his previous references to other applicants.[10] This court previously dismissed this claim for lack of jurisdiction, pursuant to the *Rooker-Feldman* doctrine; plaintiff's amendment to remove his allegation that the defendants failed to accommodate disabled applicants other than the plaintiff does not overcome this jurisdictional bar.

## The Section 1983 Claim

---

[10] As before, plaintiff alleges that "[t]he Defendants' mandate that Plaintiff – an individual with a disqualified [sic] disability – retake the MPRE and submit new scores before August of 2014 or have his application withdrawn from consideration violated the ADA[,]" that "[p]roviding such accommodation would not have created a substantial modification of the State Bar's admission standards[,]" and, thus, that "[t]he Defendants failed to provide Mr. Som with an opportunity to demonstrate his ability to become a member worthy to engage in the practice of law." (Doc. # 14, ¶¶ 54-55). Plaintiff did not amend his demand for relief in Count 3; he continues to seek an injunction "requir[ing] the Defendants to accommodate individuals with qualified disabilities under similar circumstances such as Plaintiff's to retake the MPRE, if so determined by this Court, within a reasonable time and without requiring such individuals to retake the bar exam" and "any other relief deemed just and equitable by this Court." (Id., *ad damnum* clause for Count 3).

In an effort to overcome the *Rooker-Feldman* jurisdictional bar, plaintiff has amended Count 1 to omit his previous demands for an injunction requiring the defendants "to recognize Plaintiff's bar examination score of 259 and Plaintiff's MPRE score of 90 as valid" and for "any other relief deemed just and equitable by this Honorable Court." (See *ad damnum* clause for Count 1 in both complaints and legal argument regarding *Rooker-Feldman* doctrine on pp. 2-4 of amended complaint). Plaintiff now seeks only "compensatory and punitive damages against the Defendants" for "[t]he Defendants' conduct in failing to enforce its own then rules as then reflected on its website" which, according to the plaintiff, "deprived [him] of his constitutional right to property – his right to apply for and obtain a license to practice law in the State of Alabama." (Doc. # 14, Count 1, *ad damnum* clause and ¶ 43). In other words, plaintiff no longer asks this court to enjoin the defendants to find that his existing UBE and MPRE scores are qualifying scores for purposes of his application for admission to the Alabama State Bar, contrary to the decision of the Alabama Supreme Court denying his petition for a writ of mandamus seeking this very relief; instead, he now seeks an award of compensatory and punitive damages against the Alabama Supreme Court and Alabama State Bar for the injury resulting from that adverse judgment, *i.e.*, his inability to "apply for and obtain a license to practice law in the State of Alabama" on the basis of those existing scores. Despite plaintiff's amendment to his demand for relief, the court concludes that plaintiff's § 1983 claim remains subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) because (1) this court lacks jurisdiction, under the *Rooker-Feldman* doctrine, to entertain the

Case 2:15-cv-00519-WKW-SRW Document 15 Filed 01/22/16 Page 6 of 16

claim; and (2) even if this court may exercise jurisdiction over the claim, it is barred by the defendants' Eleventh Amendment immunity.

*Rooker-Feldman*

"If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is in essence being called upon to review the state court decision. This the District Court may not do." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 n. 16 (1983). "The *Rooker-Feldman* doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). The procedural prerequisites for application of the doctrine are satisfied in this case and, while plaintiff no longer seeks injunctive relief in contravention of the judgment of the Alabama Supreme Court in Count 1, this court cannot award the damages plaintiff seeks for the injury caused by that judgment without first reviewing and rejecting it.[11] Under the *Rooker-Feldman* doctrine, this court lacks jurisdiction

---

[11] In Sibley v. Lando, 437 F.3d 1067 (11th Cir. 2005), the Eleventh Circuit held that the plaintiff's § 1983 claims for damages against three state court judges were barred by their absolute judicial immunity; the court found that the case before it was not one in which a review of its jurisdiction under *Rooker-Feldman* would be appropriate. See id. at 1070 n. 3 ("We note that this form of appellate review is unusual. Sibley does not ask us to fix an erroneous state court judgment, which we could not do, but rather to award $10 million against each state court judge who participated in

6

to do so. See Scott v. Frankel, 562 F. App'x. 950, 953-54 (11th Cir. 2014) (unpublished opinion) (holding that a claim for damages against individual defendants who were involved in the Florida Supreme Court's disciplinary suspension of the plaintiff from the practice of

---

his cases. This alignment of parties distinguishes this case from a case where review under the *Rooker-Feldman* doctrine would be appropriate."). However, the court "reject[ed], from the outset, the use of § 1983 as a device for collateral review of state court judgments." Id. at 1070 (citing Exxon Mobil; footnote 3, *supra*, omitted). It explained that, "[a]s § 1983 is applied to this case, therefore, we do not ask whether civil incarceration was appropriate. The inquiry is whether ordering civil incarceration is a judicial activity. Similarly, we do not review whether the substance of a question at oral argument was improper, but rather, whether questions in oral argument are judicial acts. Sibley had his opportunity to contest the propriety of these judges' merits decisions in the appellate process." Id. The "alignment of [the] parties" was the distinguishing point cited by the Eleventh Circuit in concluding that *Rooker-Feldman* was not implicated as to Sibley's claims for damages. Id. at 1070 n. 3.
  This court admits to difficulty in following the Sibley court's rationale, as footnote 3 seems to be at odds with the court's explanation (in which it cites Exxon Mobil) that the scope of its review does not include the merits of the judges' underlying decisions, and the Sibley court does not explain what it was about the parties' alignment that placed the plaintiff's claims beyond the reach of the *Rooker-Feldman* doctrine. As to the Sibley parties' alignment, the court notes that the defendant judges allegedly committed state torts and violated the plaintiff's federal civil rights in the course of presiding over an underlying child support dispute to which they were not parties. See id. at 1069. Thus, the state court judicial decisions at issue in Sibley pertained to the plaintiff's obligations to a party not before the federal court, and a federal district court judgment awarding damages against the state court judges would not alter or affect Sibley's obligations to that absent state court party.
  In this case, plaintiff's § 1983 claims arose in the context of an application for admission to the Alabama State Bar. Plaintiff alleges that the ASB "functions on behalf of the Alabama Supreme Court in matters pertaining to the admission to practice law in the State of Alabama" (Doc. # 14, ¶ 3), and the Alabama Supreme Court has "continuing, inherent, and plenary" authority to govern admissions to the bar (see Ex parte Grubbs, 542 So.2d 927, 931 (Ala. 1989)). Thus, the parties now before the court were also the sole parties to the underlying dispute regarding plaintiff's qualifications for admission, and a judgment awarding damages to the plaintiff would alter the legal relationship between these parties. The parties' "alignment" in this case distinguishes it from Sibley and, thus, Sibley is not controlling on the *Rooker-Feldman* issue now before this court. But see Caffey v. Alabama Supreme Court, 469 F. App'x. 748 (11th Cir. 2012) (unpublished decision) (affirming decision of the district court dismissing the plaintiff's claims for declaratory and equitable relief against the Alabama Supreme Court, the ASB and other defendants, arising from the plaintiff's disbarment, on *Rooker-Feldman* grounds, dismissing her claims for damages on Eleventh Amendment grounds).

7

law was barred by the *Rooker-Feldman* doctrine as the claim was "inextricably intertwined" with the decision of the state court); see also Scott v. Frankel, 606 F. App'x. 529 (11th Cir. 2015) (concluding that *Rooker-Feldman* barred plaintiff's claims for damages arising from his suspension because the plaintiff would prevail on those claims only if the district court concluded that the Florida Supreme Court's holdings were wrong); see also Alvarez v. Attorney General for Fla., 679 F.3d 1257, 1262-63 (11th Cir. 2012) ("[T]he *Rooker-Feldman* doctrine operates as a bar to federal court jurisdiction where the issue before the federal court was 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'")(citation omitted).

*Eleventh Amendment*

Additionally, even if the *Rooker-Feldman* doctrine is not implicated as to plaintiff's claim for damages, Count 1 remains subject to dismissal under § 1915(e)(2)(B)(iii) on Eleventh Amendment grounds. Under the Eleventh Amendment, a state is generally immune from lawsuits brought in federal court by private citizens. Hans v. Louisiana, 134 U.S. 1 (1890). The Eleventh Amendment bars suits directly against "the State or one of its agencies or departments ... regardless of the nature of the relief sought" (Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-101 (1984)) and extends to a defendant that acts as "an arm of the State" (Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003), *cert. denied*, 540

8

U.S. 1107 (2004)). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Board of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001). Absent the state's "unequivocally expressed" consent or waiver of its Eleventh Amendment immunity, or a valid abrogation of that immunity by Congress, a federal court may not exercise jurisdiction over a lawsuit against a state. Pennhurst, 465 U.S. at 99; Garrett, 531 U.S. at 363; Cross v. State of Alabama, 49 F.3d 1490, 1502 (11th Cir. 1995). The court concludes that the defendants before the court each acts as an "arm of the State" in performing the functions implicated in plaintiff's claims, that the State of Alabama has not waived its Eleventh Amendment immunity from suit, and that the state's immunity has not been abrogated by Congress.

Each defendant acts as an arm of the State of Alabama. "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Manders, 338 F.3d at 1308. As to the Alabama State Bar, plaintiff's claims arise from the entity's function of evaluating bar admission applications to determine whether applicants satisfy admission standards promulgated by the Alabama Supreme Court, and certifying those applicants it deems qualified to the Alabama Supreme Court for admission to the bar. Plaintiff's § 1983 claim against the Alabama Supreme Court relates to its judicial function of governing admission to the Alabama State Bar. To determine whether each defendant

entity acts as an "arm of the state" in carrying out the particular functions giving rise to plaintiff's claims, the court evaluates four factors: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309. While the ultimate issue is one of federal law, "the federal question can be answered only after considering provisions of state law." Id. Upon consideration of these factors, the court concludes that each defendant acted as arm of the state with regard to the challenged conduct.

Plaintiff alleges that "Defendant, Supreme Court of Alabama, is a 'governmental entity' in the State of Alabama" and that the Alabama State Bar "functions on behalf of the Alabama Supreme Court in matters pertaining to the admission to practice law in the State of Alabama." (First Amended Complaint, ¶¶ 2-3).[12] These allegations are correct, as a matter

---

[12] Plaintiff alleges that officials of the Alabama Supreme Court and the Alabama State Bar violated his constitutional rights "in their individual capacity." (Doc. # 14, Count 1). While the plaintiff appears *pro se*, he is a law school graduate. Plaintiff has identified the parties in separate numbered paragraphs within Section A ("PARTIES") of his First Amended Complaint, and he sues only two defendants: the Alabama Supreme Court and the Alabama State Bar. (See Doc. # 14, ¶¶ 2-3). The court declines to construe Count 1 to assert claims against any individual-capacity defendant, particularly since it appears that such claims would also be subject to dismissal pursuant to § 1915(e)(2)(B) on grounds of judicial immunity and/or failure to state a claim.

On the latter point, the court notes that plaintiff's § 1983 due process claim rests on his erroneous contention that he was entitled to admission based on the "old" rule that remained posted on the ASB's website after it was superseded. (See Doc. # 14, ¶ 24). However, as the court explained in its previous recommendation, the "old" rule defined the "Academic Bar Examination" to include the Alabama essay examination. (See Exhibit K to First Amended Complaint, Doc. # 14-11, p. 1("old" Rule VI(A)(1), listing and describing the four components of the "Academic Bar Examination[,]" including the "Alabama Essay Examination")). Plaintiff did not take the Alabama essay examination, so the "old" rule's provision allowing a successful score from an MPRE examination to be carried over "for a period of twenty (20) months from the time the first Academic Bar Examination is taken, if the applicant does not pass the Academic Bar Examination" (see Doc. # 14-11 at p. 4 (Rule VI(F)) would not apply to plaintiff's MPRE score. Because he did not take the

of Alabama law. See Board of Commissioners of Alabama State Bar v. State *ex rel.* Baxley, 324 So.2d 256, 261-62 (Ala. 1975)(regulation of admission to practice law is a judicial function); Simpson v. Alabama State Bar, 311 So.2d 307 (Ala. 1975)("The Board [of Bar Commissioners] was created in aid of [the Alabama Supreme Court], which has the inherent jurisdiction to admit attorneys to the practice of law and to suspend or disbar them."); Ala. Code, § 34-3-40(a)(the Board of Commissioners is the governing body of the Alabama State Bar); Ala. Const., Art. III, § 42 (dividing powers of the state into "three distinct departments" – legislative, executive, and judicial); id., Art. VI, § 139 (judicial power of the state "vested exclusively" in the unified judicial system, which includes the Alabama Supreme Court); Ala. Code, § 12-1-2 (same); Ala. Const., Art. VI, § 150 (Alabama Supreme Court's authority

---

Alabama essay examination, plaintiff also does not satisfy the "old" rule's requirement for passing the Academic Bar Examination. Thus, plaintiff's claim that he failed to register for the March 29, 2014, MPRE (the latest administration of the examination that would allow for receipt of scores before the August 2014 increase in the minimum required UBE score) in reliance on his qualification for admission under the terms of the "old" rule rests on an untenable interpretation of that rule. (See Doc. # 12, Plaintiff's Objection, at p. 4). In short, plaintiff seeks to avail himself of the UBE-transfer provisions of later iterations of the bar admission rule, but without the concomitant provisions governing the validity period for the MPRE scores of UBE-transfer applicants.

     Plaintiff's equal protection claim rests on the faulty premise that applicants who apply for admission based on a transferred UBE score are nonresidents, and those who take the academic bar examination within Alabama are residents of Alabama. Plaintiff points to no provision within the Rules Governing Admission to the Alabama State Bar that precludes or limits nonresident applicants from sitting for the academic bar examination in Alabama, or that precludes resident applicants from transferring UBE scores from another jurisdiction for purposes of admission by examination, and the court has found no such provision. "The right to practice law is not a fundamental right and therefore rational basis review is the appropriate standard for classifications affecting applicants for admission to the bar." Kirkpatrick v. Shaw, 70 F.3d 100, 103 (11th Cir. 1995). As noted in the previous recommendation, the differing formulations for the MPRE validity period for UBE-transfer applicants and Alabama examination applicants results in an identical maximum age for qualifying MPRE scores across both groups. (See Doc. # 9, p. 6 n. 6).

to promulgate rules governing practice in all courts).

It is beyond dispute that the Alabama Supreme Court – as the highest court in the department established by the Alabama Constitution to exercise the judicial power of the State of Alabama – is a state entity under Alabama law. Ala. Const., Art. VI (judicial article) and art. III, § 42. The legislation that created the state's integrated bar does not designate the State Bar or its Board as a state entity explicitly. However, the Alabama Supreme Court has determined that the entity was established and operates as an arm of the court. In Baxley, *supra*, the Alabama Supreme Court held that a statute that modified admission standards established by the Board of Bar Commissioners of the Alabama State Bar encroached on the judicial sphere of operation and, thus, violated the separation of powers provisions of the Alabama constitution. Baxley, 324 So. 2d at 262-63. The court's holding rested on its conclusion that, "[a]lthough the Board was created by the legislature, it was created as an arm to this court and any action by the Board is subject to review or approval by this court. The legislature has not created an entity which is not subject to control or regulation, the Board is subject to the control of this court." Id. at 262.

The operating expenses of the Alabama Supreme Court are paid by the state. Ala. Code, §§ 12-19-1, 12-19-3(1)(a), 12-19-6; see Folsom v. Wynn, 631 So.2d 890 (Ala. 1974). While the Alabama State Bar receives fees from applicants and bar dues from member attorneys, such fees must be deposited into a fund in the state treasury, and may be disbursed from that fund only upon warrant of the State Comptroller. Ala. Code, §§ 34-3-4; 34-3-44.

The State Bar may not withdraw or expend funds "except as budgeted and allotted according to the provisions of Article 4 of Chapter 4 of Title 41 of [the Alabama] Code, and only in amounts as stipulated in the general appropriation bill." Id., § 34-3-44. Thus, it appears that a monetary judgment against either defendant would be disbursed out of the state treasury. See Nichols v. Alabama State Bar, 2015 WL 3823929, *4 (N.D. Ala. Jun. 19, 2015)(concluding that a monetary judgment against the Alabama State Bar "would effect a drain on the treasury, albeit to a separate fund"); see also Fouche v. Jekyll Island State Park Authority, 713 F.2d 1518, 1521 (11th Cir. 1991)("[B]ecause the Park Authority's budget is submitted to the General Assembly, presumably the state would be responsible for any debts incurred by it that could not be paid out of its revenues.").

Upon consideration of the four Manders factors, the court concludes that each defendant acts as an arm of the state in performing the functions that gave rise to plaintiff's claims. See Nichols, 2015 WL 3823929 at *1 (deciding, in a case involving attorney discipline, that "ASB is an arm of the state of Alabama and thus is entitled to the protections of the Eleventh Amendment"); McFarland v. Folsom, 854 F. Supp. 862, 872 (M.D. Ala. 1994) (concluding that the Eleventh Amendment barred "claims against those defendant entities who are identified in the complaint simply as 'the Alabama State Board of Bar Examiners,' the 'Alabama State Legislature,' and the 'Alabama Supreme Court'"); see also Kaimowitz v. The Florida Bar, 996 F.2d 1151 (11th Cir. 1993) (determining that the Eleventh Amendment barred plaintiff's claims for damages against the Florida Bar and the

Florida Supreme Court); Lewis v. Louisiana State Bar Association, 792 F.2d 493 (5th Cir. 1986) (Louisiana State Bar Association entitled to Eleventh Amendment immunity in case involving bar admission rules); cf. Foley v. Alabama State Bar, 648 F.2d 355, 359 (5th Cir. Unit B Jun. 19, 1981)(concluding, in holding that an antitrust claim against the state bar fell within the "state action" exemption of the Sherman Act, that "the [Alabama State] Bar *is a component of the Alabama judiciary*, subject to the supervision of the Alabama Supreme Court, and thus it acts as an agent of the state when it regulates attorneys") (emphasis added) (citing Baxley)[13]; Caffey, 469 F. App'x. at 751 (Alabama Supreme Court and Alabama State Bar entitled to Eleventh Amendment immunity from suit in action arising from plaintiff's disbarment).

The State of Alabama has not expressed its consent to suit or waived its sovereign immunity, and Congress did not abrogate that immunity in § 1983. The Alabama Constitution provides that "[t]he state of Alabama shall never be made a defendant in any court of law or

---

[13] The Foley court also rejected the argument, raised on appeal, that "the Alabama State Bar is not a properly suable entity." 648 F.2d at 359. The Foley opinion gives no indication that this holding relates to the issue of Eleventh Amendment immunity, as opposed to the issue of whether the State Bar has the capacity to be sued at all under Alabama law. See, *e.g.*, Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit ... . Under Alabama law, a county sheriff's department lacks the capacity to be sued."). The court cannot conclude that Foley resolved the issue of whether, for purposes of Eleventh Amendment immunity, the Alabama State Bar acts as an "arm of the state" in performing its bar admission functions or, even, the disciplinary and regulatory functions at issue in that case. The mere fact of the court's remand to the district court for proceedings on the merits on the plaintiffs' constitutional claims against the State Bar does not constitute precedent on the Eleventh Amendment issue. See United States v. Mitchell, 271 U.S. 9, 14 (1926) ("It is not to be thought that a question not raised by counsel or discussed in the opinion of the court has been decided merely because it existed in the record and might have been raised and considered.").

equity." Ala. Const., Art. I, § 14. Alabama has not consented to being sued as to any of plaintiff's claims. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) ("Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution[.]"); Stroud v. McIntosh, 722 F.3d 1294, 1303 (11th Cir. 2013) ("Alabama retains a 'nearly impregnable' immunity from suit, Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002), and neither the state legislature nor any other state authority can waive it, Larkins v. Dep't of Mental Health & Mental Retardation, 806 So.2d 358, 363 (Ala. 2001)."); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). It is well-settled that Congress did not abrogate the states' eleventh amendment immunity in section 1983. Cross, 49 F.3d at 1502; Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990).

Accordingly, even if the *Rooker-Feldman* doctrine does not bar this court from exercising jurisdiction over plaintiff's § 1983 claim for damages, Count 1 remains subject to dismissal under § 1915(e)(2)(B)(iii), as it is barred by the defendants' sovereign immunity and the Eleventh Amendment.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that final judgment be entered dismissing this action without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B).

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate

Judge and to serve a copy on the parties. The parties may file objections to this Recommendation on or before February 5, 2016. Any such objections must identify the specific factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the party objects. The District Judge will not consider frivolous, conclusory, or general objections.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Judge of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; see Dupree v. Warden, 715 F.3d 1295 (11th Cir. 2013).

Done, this 22nd day of January, 2016.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE